SSL Services v. Cisco Services, Inc. Mr. Battaglia, please proceed. Thank you, Your Honors, and may it please the Court, as the Board itself here recognized, the issue about whether there was a sufficient showing for a motivation to combine the references here, turned on whether there was, quote, a showing of a differentials and burdens between the Alden reference on the one hand, and the proposed combination of Alden and Takahashi on the other. Am I correct that SSL only disputes on appeal the combination of the two of the four references? On appeal, that's the focus, absolutely, and it's the focus because there's no evidence here supporting what the Board found in saying that there was improved performance by addressing the pre-configuration processing burden. That's what the Board was discussing when it was talking about the motivation to combine on A-28 and A-29 of the record. There's no decision... I'm trying to narrow your broadening as I ask you the question. Absolutely, and that is the issue, but to show the motivation to combine, they would have had to come forward, they, Cisco, would have had to have evidence showing that this pre-configuration processing burden was viewed as a problem in the field, or otherwise that... KSR says that under the correct analysis, any need or problem known in the field of endeavor at the time of invention and addressed by the patent can provide a reason for combining. Given how Takayashi discusses the programmatic undesirability of modifying a computer's communications control software and says changing the TCP slash IP software is a problem, is that not enough reason to motivate a person of skill to combine with all of them? No, Your Honor, and for two main reasons. There is no evidence showing that, again, this modification of the software was viewed as a burden or a problem in the field. The experts here actually agree that the relevant standard for determining whether or not a modification would be undesirable, would be a burden that would motivate somebody in the field, is whether it would upset programmer expectations. I guess getting to the Takahashi reference, it does say repeatedly over and over again how its goal is to not modify the stack, and it says, yeah, it says we do not want to change TCP slash IP protocol, and it refers to changing that software as being a problem, and it's their goal to change the stack. So in that context, why was it unreasonable for the board to point that out and use that as a basis for combining the references so that when it comes to Alden, you don't need to any longer touch the stack? Well, there's two short answers to that, too, Your Honor. One shorter, one longer, I'll say. Under this court's precedence, it is in Rivalma, this court has held that a prior art reference generally references a desired trait or improvement in the field. That's not enough to show a motivation to combine, even if the prior artist has this general expression of wanting to do that. There has to be something more. Point two, the longer point is, this is not a modification in the first place. There's no dispute here about what's actually happening with respect to Alden. It's not a modification that changes the function or the operation of the software and how it works. It's just merely updating the data, the numbers that are sent and used by the routing table in the communication software. In other words, the numbers just like your phone uses and needs updated numbers or telephone numbers to make the correct connection. That's not a modification of the software. That's just providing the data that the software needs to operate. It's not a modification in the first place. I know the board essentially made the factual finding, of which there's no dispute here, that this is just providing updated information, updated data to the routing table, but it called that a modification of the software. That's the wrong conclusion for the reasons I just mentioned. It doesn't do anything to change the function or operation of the software. If you look at Takahashi itself, which as your Honor noted, talks about doing this approach for VPNs without modifying software, even discusses in the negotiation process, and I think this is at A785 of the record, and it talks about having the port numbers or destination addresses modified and changed by the communication software. That's described as being part of the process without changing the software. Takahashi itself illustrates the same point here. Merely changing or providing updated data is not a modification. It's just providing the data that the software needs. That's the reason why the board's decision is an error in finding that this was a modification, let alone a modification that would impose a burden. There's no evidence tying a modification here as being viewed as a burden in the field. In 34 and 35 of the Blue Brief, SSL cites Cisco's expert deposition and argues that the expert, and I'm quoting, "...refused to identify the burdens of Takahashi beyond the tautology that Takahashi did not have the burden of Alden in reconfiguring the routing table." And I went through that testimony repeatedly. I have a little bit of it here. You said, question, and you said Alden has a burden, right, sir, the answer. I said that Alden has a particular burden, which I specified and elaborated on. Right. Does Takahashi have any particular burden, sir? Takahashi does not have that burden. Okay, does Takahashi have any other burdens then? Answer, I'm not quite sure what you mean. Question, I'm talking about what you mean when you say burden, sir. It does not have, answer, it does not have that burden of reconfiguring, of Alden in reconfiguring the routing table. When I read that line of questions, the expert was simply answering your narrow question of whether a specific burden existed. I don't see any refusal. And yet, you say he refused to identify the burdens of Takahashi. And that's your basis for saying that. Well, I think if you look at the Q&A. I did. I'm sorry. The question is asking, what other burdens does Takahashi have? And the expert here with the burden of proof doesn't in his declaration specify the overall burdens or improved performance. He's answering your questions. Well, I think we may have, respectfully, Your Honor, I think there may be a disagreement on the view of that. But the questions, in our view, speak to the issue about whether the expert here with the burden of proof is addressing the question on Takahashi and, by extension, Takahashi and Alden have a burden that is greater than or less than or equal to the burdens in the Alden reference itself. And the expert here with the burden of proof doesn't, in either his declaration or his deposition, provide evidence showing that, oh indeed, Takahashi reduces the overall burden with respect to Alden or doesn't otherwise show that there's improved performance. And it was their burden to show that Takahashi or the combination of Takahashi and Alden would have improved the processing or improved performance, as the board described, as being a motivation or would have somehow reduced the overall burden for that combination. So our point there is simply the expert did not provide evidence showing that when he had an obligation, or at least Cisco had an obligation to put forward evidence proving that point. It wasn't our burden to do that. And so all we have then, with respect to the burdens issue on the comparison question, is Dr. Kalanidhi is testifying that Alden has a significant pre-configuration processing burden without describing what the overall burdens are with respect to Alden. And the proposed combination or Takahashi does not have that particular burden. But that doesn't answer the question here. The question is, would a person of skill in the art view this as something that would improve performance, such that they would look past Alden or want to combine Alden with Takahashi? And there's no evidence of that. There's no evidence making that comparison. And that's the reason why, it seems, Cisco in their opposition brief doesn't defend the board's burden analysis because there's no evidence making that comparison or, as the board itself asked at the hearing, showing that there's a differential in burdens between Alden on the one hand and Alden and Takahashi on the other. And without that then, there was no evidence for the board to conclude, no substantial evidence for this court to conclude, that therefore, a person of skill in the art would have been motivated to make that combination. And so that just leads to the other point from the board that it references Alden figure three and the 10 steps that are used by the Alden process. And you'll see in our briefs, we noted that that was raised not in the original petition, but was raised for the first time in the reply, which is contrary to the rules and contrary to this court's precedent. And so we didn't have an opportunity to respond to that. But that still doesn't change the outcome here about the absence of substantial evidence because there's no evidence, again, showing that whether it's 10 steps or four steps with respect to how these systems operate, there's no evidence, no expert testimony or anything of the kind showing that steps are equated with burden. It could be 10 simple steps, and it could be four really complicated steps. And at the hearing, Cisco brought out for the first time, and in its reply brief, the comparison of Alden having 10 steps versus Takahashi only having two or four, something to that effect. But there's another figure. Do you agree that the need to modify Alden is a factual dispute? Well, the desire to modify it? Yes, I would. But the board on that particular fact finding found that the modification, as I mentioned here, is not anything that changes the functionality or operation of the software. What the board said, and this is A28 going up to A29 of its opinion, said that there's a modification in that the information or the data being used by the routing table is a modification. And that just gets back to my earlier point that merely providing updated information to the routing table is not a software modification. Shims were well known in the art at the time.  It is fair to say. What is what's inventive? Looking at the background of this patent, the 011 patent, and it says at the bottom of column three to the top of column four, if possible, it is generally desirable to minimize modification of the existing levels by adding a layer to perform the desired functions, calling upon the surfaces of the layer below while utilizing the same function calls so that the higher layer also does not need to be modified. Such a layer is commonly referred to as a shim. So I guess my question is, isn't the background of the invention of your patent basically saying, yeah, you want to use a shim to avoid touching the layers of the stack? And so we want to avoid modifications to the stack. That's what this is saying in the background of the patent. The patent talks about the desirability of avoiding software modifications. I don't think that changes anything about the analysis and the record supported here, which is that merely providing an updated routing table is not a modification of the software. It doesn't change the function or operation of the software, which the undisputed record evidence here shows is something that is done virtually in every type of computer in a network, in a system. It's done by virtually every computer. So that would not, per the relevant standard agreed by the experts, upset programmer expectations. It wouldn't be a modification. Your rebuttal time, would you like to save it? I will save it, Your Honor. Thank you. Mr. Foster. Thank you, Your Honors. May it please the Court. I'd like to start picking up Judge Chen with the point that you were pointing out, that the patent at issue here, in its own background, pointed out that it was desirable to avoid modifying the TCPIP stack, to avoid making changes to that communication control software. I'd also point out that the applicants during prosecution of this patent specifically argued that point as a reason for allowance. That's in the appendix at page 147. Regarding SSL's arguments here that the modification that Alden is making is just to the routing table, that isn't a modification that counts. That's a question of fact, and it was resolved below by the Board, citing to Alden itself, which in column 19, lines 60 and 61, states, and uses the word modify, states that it requires modifying that routing table, and that routing table is part of the TCPIP stack. What does it mean to modify the routing table? Are you just changing the data inside the table, as opposed to changing, perhaps, the structure or the underlying software of the table? In this context, I believe that it means adding additional entries that are going to control how the software operates, so that certain packets will be diverted and handled differently than they would have been before. I'd also point out that the modification, the routing table is not the only modification that Alden makes. If you look in our applie brief at page 24, we discuss some of the other modifications that Alden requires. It requires adding a pseudo network adapter, and getting that registered with the IP layer to, again, change the operation of the TCPIP software there. Adding in what's called an ARP emulator, adding in what's called a DHCP emulator, and those are processes that are going to manipulate the way that the TCPIP stack is operating. The routing table update is not the only update in question, but certainly is one of the ones that the board cited, and appropriately so. Regarding this issue, this case is here on appeal under the substantial evidence standard. The question is, is there evidence in the record supporting the board's conclusion that Alden requires modification? Of course, Alden itself uses the word modify with respect to the operation of its TCPIP stack. As I mentioned in column 19, I think the board's decision is supported on that fact. What's the evidence that there would be a motivation to reduce pre-configuration processing burden? So, regarding the pre-configuration processing burden, what the board cited and explained in its decision, if you look at appendix page 30 in the board's decision, they described Alden's initialization process and the steps that it goes through to get an IP address for the secure communication link itself. And then if you look at pages 31 and 32, the paragraph spanning those pages, they explained, again, citing to the testimony of SSL's expert, Dr. Hamilton, they explained that the distinction between how Alden will work and how Alden will work with Takahashi, or how Takahashi works on its own, is that Alden requires going through those processing steps for every new secure connection. But Takahashi only requires getting an IP address once, when the computer starts up. And so that's one of the differences between the operation. The problem is that the way you just described it sounds very much like hindsight. I said to you, what's the motivation that one would have to want to change Alden? Alden's the primary reference, right? So there has to be a motivation. There has to be someone looking at Alden saying, ah, there's a problem here. That pre-configuration delay is causing a lot of processing problems. Where is that evidence? Where is there some evidence that a skilled architect looking at Alden would want to reduce pre-configuration delay? Where is even a recognition of a delay or a problem? Yes, certainly. So I would point you to the declaration of Cisco's expert in his opening declaration. Paragraph 135. What page of the appendix? I can't make any calls. It's appendix page 634. 634? There in paragraph 135, Dr. Kelly-Natives explained that one of the restrictions on Alden's technique is that it requires this pre-configuration setup to identify the secure communication destination before any application attempts to communicate with it. So it requires initialization and setting up and maintaining that secure communication link before it's ever actually requested by any software. And so that's the pre-configuration burden that we discussed in the petition. And it's that restriction on identifying who you want to talk to before you ask to talk to them. In a sense, it requires anticipating the destination. And then, as we mentioned, with the third motivation combined that was in the petition the board didn't get to, that initialization process that Alden goes through then restricts  only communications with those destinations that were previously configured. Whereas Takahashi performs these steps of determining whether secure communication is possible when the application software requests the initialization of a communication connection. So when the connection to a server is first established, that's when Takahashi will determine whether or not secure communication is possible. And if so, make sure that it is secure and encrypt those communications. I'd also like to touch on the argument regarding Alden's 10-step initialization process. Alden's 10-step initialization process, obviously, was in the case from the very beginning. It was in evidence. It was in Alden. Alden describes it. It's there in figure 23. And the arguments that SSL is making now are not reviewable under substantial evidence. SSL is arguing that the board violated its own rules or allowed Cisco to violate its rules regarding the scope of a petitioner's reply. And that's simply not the case. That sort of decision should be reviewed for abuse of discretion. And that's covered in the Intelligent Biosystems case that SSL cites on this matter. If you look at appendix page 3828, you will see where Cisco discussed the 10 steps in its petitioner's reply. And it was clearly in response to arguments that SSL had made. And in fact, that SSL is repeating here relating to trying to argue that Takahashi and Alden had similar pre-configuration requirements. And as I discussed earlier, that's simply not the case. But the argument about the 10 steps was clearly made in reply. And the board found that in the appendix, page 37, they determined that there was no improper new arguments raised. In summary, the board here spent slightly more than four pages exhaustively addressing the motivation to combine and extensively citing to the testimony of both experts and the references themselves. I believe that that treatment deserves this court's affirmance. If there's no further questions, I'll see the remainder of my time. Thank you, Mr. Foster. Thank you, Your Honor. As to the point about the modification of software and what the modification here is, a couple of points. First, the board itself only made the finding, only found that the modification here involves updating of data sent to the routing or used by the routing table. So the other cited modifications here are not facts in this case, and there was no argument then by Cisco that they should have been found by the board, or the board erred somehow in not making those additional findings. Second, with respect to that issue, the wrong expert identifies in his deposition that the only modification for him in here involved the routing table. So again, there's no evidence to support these other modifications. And their brief otherwise cites to Dr. Colanitti's declaration, as the board did as well, at paragraphs 140 through 143, as showing what the modification is here. But when you look at the Colanitti's, that's their expert declaration, it doesn't have any discussion about what the modification in Alden is. It just assumes, at most, that there's a modification in Alden, and if you have the modification in Alden. So the evidence doesn't speak to these other modifications, and otherwise gets back to this core question on the board's error in finding that this was a change that would have motivated a person of skill in the art. It is not. Mr. Paglia, we're out of time. Do you have a final thought? Your Honor, thank you, Your Honor. If this case has sufficient evidence to support a motivation to combine references based on this lack of record evidence, for all the reasons I pointed out and emphasized in our brief, then I submit that any motivation to combine would be sufficient to support a proposed combination. And for that reason, the board's decision should be reversed. I thank both counsel. The case is taken under submission.